(238 P.3d 757)
No. 102,648

IN THE MATTER OF THE EQUALIZATION APPEAL OF LIPSON,
EDWARD A., FOR THE YEAR 2008 IN MORRIS COUNTY, KANSAS.

Opinion filed September 10, 2010.

*William A. Kassebaum*, county counselor, for appellant Morris County.

*Edward A. Lipson*, appellee pro se.

*William E. Waters*, of Property Valuation Division, Kansas Department of Revenue, for *amicus curiae* Mark S. Beck, Director of Property Valuation.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

GREENE, J.: Morris County appeals a decision of the Court of Tax Appeals (COTA), which reduced the valuation of a mobile home and other improvements owned by Edward A. Lipson and located on land leased from the City of Council Grove. The County argues that COTA erred in finding that the reduction was necessary in order to exclude "the value of taxpayer's intangible right to the

lot lease." Lipson has not appealed the resulting valuation of $71,000 for his improvements. Concluding that leasehold interests are not taxable in Kansas, we affirm COTA's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Lipson entered into a "City Lake Lease" with the City of Council Grove in March 2007 for a "cabin site" on Council Grove City Lake referred to as R-6. The lease was recorded under an affidavit from the City Administrator/City Clerk, citing K.S.A. 79-412 and averring that the City of Council Grove owns the real estate but does not own any improvements on the lot. The leasehold interest was transferred to Lipson from a prior lessee, who contemporaneously conveyed to Lipson the improvements on the property including a mobile home, two docks, a stoop, and a storage shed. The transfer/conveyance agreement between Lipson and the prior lessee contained an apportionment of the $126,000 purchase price, allocating $100,000 to the lease rights, $20,000 to the mobile home, and $6,000 to the furnishings.

The disagreement between Lipson and the County began in 2008, when the County valued the subject property for tax purposes. The County did not utilize the Kansas Department of Revenue Property Valuation Division's (PVD) guide for mobile homes after it determined that mobile homes located at the lake were selling for significantly more than the values indicated by the guide. The County chose instead to rely on its Computer Assisted Mass Appraisal (CAMA) system sales approach which relied on sales of comparable mobile homes located at the lake. Accordingly, the County valued the mobile home, docks, stoop, and storage shed on the property at $128,450. This assessment was later reduced to $107,800 after a hearing before the Small Claims Division of COTA.

Lipson appealed the small claims determination to COTA, arguing that the County's valuation of the improvements improperly assigned the "intangible value" of his lakeside leasehold interest to him. Lipson pointed out that in the prior year, 2007, the property was assessed at only $71,080. Furthermore, Lipson cited numerous sales of comparable properties at the lake, wherein buyers pur-

chased 1970's mobile homes and a transfer of lake lot leases for $88,000 to $99,000 and subsequently removed or destroyed the mobile homes. He also presented a sales listing for the rights to a lot lease containing no improvements for $120,000. Lipson contended that this evidence supported his contention that the majority of the subject property's market value is in the intangible rights to the leasehold interest and *not* the subject improvements.

COTA agreed with Lipson and reduced the value of his property, as he requested. In reaching its conclusion, COTA reasoned that only real and tangible personal property are subject to *ad valorem* taxation in Kansas. It follows, COTA suggested, that intangible property of any kind is not subject to taxation in Kansas. COTA then determined that the County's appraisal of $107,800 for Lipson's property captured a nontaxable intangible interest in the leased property and was therefore inappropriately included in Lipson's taxable value. COTA concluded that Lipson's valuation opinion was more accurate and assigned the improvements a value of $71,000.

Morris County appeals COTA's valuation determination.

## STANDARDS OF REVIEW

The Kansas Judicial Review Act (KJRA), see K.S.A. 77-601 *et seq.*, governs appellate review of COTA rulings. K.S.A. 2009 Supp. 74-2426(c); K.S.A. 77-603(a). KJRA delineates specific circumstances under which this court may properly grant relief. Relevant here, relief shall be granted when (i) the agency has erroneously interpreted or applied the law; or (ii) the agency action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(3) and (8). Because the County is challenging COTA's determination, it bears the burden of proving the invalidity of the agency's action. K.S.A. 77-621(a)(1).

To the extent that resolution of this issue involves statutory interpretation, this court exercises unlimited review. *In re Tax Appeal of Graceland College Center*, 40 Kan. App. 2d 665, 668, 195 P.3d 245 (2008), *rev. denied* 289 Kan. 1278 (2009). We are guided, however, by the general rule in Kansas which instructs that when construing tax imposition statutes, provisions which impose the tax

are to be construed strictly in favor of the taxpayer. *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003).

As is usually the case, determining whether an agency has erroneously interpreted or applied the law is a question of law over which an appellate court's review is unlimited. *In re Tax Appeal of Graceland*, 40 Kan. App. 2d at 667.

### DID COTA ERR IN REDUCING LIPSON'S 2008 TAXABLE VALUATION OF IMPROVEMENTS ON THE LEASED LOT?

The County challenges COTA's decision principally because it excluded from taxable value the "taxpayer's intangible right to the lot lease in its appraisal of the subject property." After noting that the County had the burden to initiate the production of evidence to demonstrate the validity and correctness of its valuation determination, COTA's findings and conclusions included in material part:

"Kansas statutes and relevant Kansas caselaw indicate that only real and tangible personal property are subject to *ad valorem* taxation in Kansas. K.S.A. 79-101 provides that, '[a]ll property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act.' Further, K.S.A. 79-102 defines 'personal property' as 'every tangible thing which is the subject of ownership, not forming part or parcel of real property.' In *In re Tax Protest of Strayer*, 239 Kan. 136, 716 P.2d 588 (1986), the Kansas Supreme Court was asked to decide the issue of whether certain computer software was subject to tax under K.S.A. 79-101. The Supreme Court concluded that the definition of personal property as 'every tangible thing' indicated that intangible application software was not included in the term personal property and, as a result, was not taxable under K.S.A. 79-101. See *In re Appeal of Western Resources, Inc.*, 22 Kan. App. 2d 593, 595, 919 P.2d 1048 (1996). Consequently, the Court finds that non-tangible property is not subject to *ad valorem* taxation in Kansas and should not be included in a real property appraised value.

"The Court finds that the County has improperly included the value of the Taxpayer's intangible right to the lot lease in its appraisal of the subject property. The manufactured housing appraisal guide developed by PVD values the subject mobile home and improvements at $18,940, yet the subject property and the rights to the lot lease sold for $120,000 in April 2007. The April 2007 sale of the subject property, and the Taxpayer's and County's sales comparables clearly indicate that a considerable portion of the sales prices paid for lake properties is for the acquisition of the seller's rights to the lot lease. The Court finds that the County

has not adjusted these sales prices to account for the intangible value of the lot lease. Without proper adjustments, these sales prices are not accurate indicators of the fair market value of the subject improvements. Given the evidence presented, the Court finds the Taxpayer's estimate of value to be the best indicator of value presented. Therefore, the Court concludes that the subject property's 2008 appraised value is $71,000."

The County and *amicus curiae* Mark S. Beck, Director of the PVD take issue with COTA's holding, arguing that a leasehold estate is real property in Kansas, is subject to ad valorem taxation, and should not be characterized as an intangible right, citing K.S.A. 77-201 *Eighth*; K.S.A. 79-102; and *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 123, 734 P.2d 1125 (1987). These statutory provisions do not support the taxability of leasehold interests, and the County's reliance on *Greenhaw* is misplaced.

K.S.A. 77-210 *Eighth* defines the terms "real property" and "real estate" to include land and all rights thereto "and interest therein" for purposes of statutory construction. This statute provides no guidance, however, on the question of which interests may be taxable under our ad valorem tax scheme, and the statute certainly provides no statutory authority to tax leasehold interests in land.

K.S.A. 79-102 defines the terms "real property" and "real estate" as including "not only the land itself" but "all buildings, fixtures, improvements, mines, minerals, quarries mineral springs and wells," and the "rights and privileges appertaining thereto." This simply means that the terms broadly include any rights and privileges that are associated with ownership of any of the listed properties; it is quite a stretch to suggest that the statute defines these terms as including a leasehold interest in or to such real property. But most importantly, this statute has remained unchanged since 1923 and did not prove influential to our Supreme Court when it held in *Greenhaw* that leasehold interests are not taxable.

In *Greenhaw*, our Supreme Court held that a leasehold estate—except an oil and gas lease—is real estate, but *amicus* PVD cites this holding without including the more applicable portion of the opinion. The entire discussion reads:

"A leasehold estate, except an oil and gas lease, is real estate under Kansas law. *A leasehold estate is not subject to real estate taxation.* Instead, a unitary assess-

ment method is used in which one value is assigned to a lot or tract of real estate and one tax is assessed and levied thereon. The practical reasons for not assessing and levying real property taxes against leases are discussed in Zinn, *The Real Estate Lease in Kansas: Some Problems of Characterization*, 17 Kan. L. Rev. 707, 725 (1969):

> 'The paramount reason appears to be that taxation of divided interests in real property is not within the scheme of the Kansas taxation statutes. Thus, in compiling the real estate assessment rolls, the county clerk is required only to consult the transfer record in his office, the records and plats in the office of the register of deeds, and reports from United States land offices, in obtaining information pertaining to ownership of real property. Moreover, the county assessor is to compute taxes to be levied only on tracts or lots of real property in the names of the owners thereof. Neither the county clerk nor the county assessor is required to search out divided ownerships created by leases, many of which are unrecorded. To impose this search on county clerks and assessors would perhaps prohibitively increase the administrative burdens placed on those county officials, and would eliminate the certainty now present in the unitary land and improvements thereon, and the values are to consider the earning capacity as indicated by lease price and reasonable rental value, it would appear that no loss in tax funds is occasioned by not separately assessing and levying a tax upon the leasehold interest of the lessee and the reversionary interest of the lessor.' " (Emphasis added.) *Greenhaw*, 241 Kan. at 123.

*Greenhaw's* refusal to tax leasehold interests was consistent with prior caselaw also declining to tax a leasehold interest, reasoning that "taxation of divided interests in real property is not within the scheme of the Kansas taxation statutes." *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 591, 701 P.2d 1314 (1985). In *Tomasic*, the court addressed a contention that the leasehold interest of the tenant of real estate financed by an industrial revenue bond issue was "personal property" under K.S.A. 79-102 and therefore taxable. The court rejected this contention, stating:

> "We find this argument to be wholly without merit. It is not supported by Kansas law or any compelling policy considerations. In fact, taxation of divided interests in real property is not within the scheme of the Kansas taxation statutes. [Citation omitted.] Accordingly, this court does not hold the leasehold interest of a lessee should be separately assessed and taxed." 237 Kan. at 591.

The County argues that the holdings of both *Greenhaw* and *Tomasic* are "no longer valid" because of a 1999 amendment to K.S.A. 79-412, as stated in its appellate brief, that "allow[s] assessment of improvements located on a leasehold interest." In fact, it was an

amendment in 1997 that permitted improvements on land owned by a city to be separately taxed to the owners of the improvements. See L. 1997, ch. 126, sec. 31; L. 1999, ch. 126, sec. 5. The statutory changes in both 1997 and 1999, however, stop far short of authorizing the assessment and taxation of leasehold interests in real estate. These changes merely authorized the assessment and taxation of improvements under specific circumstances. We reject the suggestion that neither *Greenhaw* nor *Tomasic* remain good law in Kansas.

This refusal to tax leasehold interests has been perpetuated not only by legislative silence since *Tomasic* and *Greenhaw*, but by a 2004 amendment to K.S.A. 79-412. See L. 2004, ch. 173, sec. 9. This statute governs the valuation of buildings and improvements on land and was clarified by the amendment, which specifies in the case of divided interests that "improvements owned by entities other than the owner of the land *shall* be assessed to the owners of such improvements, if the lease agreement has been recorded or filed in the office of the register of deeds." (Emphasis added.) K.S.A. 2009 Supp. 79-412. Moreover, a failure to observe the statutory requirements for such treatment "may result in such improvements being assessed to the owner of the land." K.S.A. 79-412. In all other cases, the value of the land and improvements must be entered on the assessment roll *"in a single aggregate."* (Emphasis added.) K.S.A. 2009 Supp. 79-412.

This statutory scheme defies any suggestion that the improvement owner can also be assessed some value for his or her leasehold interest. Consider how it would confound this statutory scheme if PVD's suggestion that the value of the leasehold interest could be assessed to the owner of the improvements; how could this possibly be squared with the precise language and limited options outlined in K.S.A. 2009 Supp. 79-412? PVD cites no authority—nor do we know of any—to essentially "double tax" realty under lease, valuing and assessing *both* an ownership and a leasehold interest. This would reflect a radical departure from our long-established Kansas ad valorem tax scheme. K.S.A. 2009 Supp. 79-412 contemplates that there are only two components of realty ownership subject to taxation in Kansas: the land and the improvements.

In a remarkable contrast to PVD's position in this appeal, we note that PVD does not suggest that other residential or commercial tenants have ever been taxed on the value of their leasehold interests. Although the landowners of commercial properties often have their taxable values established by an income approach that capitalizes the income stream from existing leases on the properties (see K.S.A. 2009 Supp.79-503a), we are aware of no statutory provision for the tenants of such properties to be assessed for the values of their leasehold estates. These tenants are subject to taxation on the values of personal properties located on those premises, but PVD does not suggest, nor are we aware of, any authority stating that the values of such leasehold interests are separately subject to valuation and taxation to the tenants. In particular, we take judicial notice of PVD form PV-PP-1A (rev. 9/08), which is provided by the agency for listing and itemizing elements of value for "mobile homes used for residential housing," and the form contains no mention of and apparently contemplates absolutely no valuation or taxation of the leasehold interest where the mobile home is situated.

In summary, we agree with COTA insofar as it held that leasehold estates are not subject to ad valorem taxation in Kansas.

## Was COTA's Valuation of Lipson's Property Unreasonable, Arbitrary, or Capricious?

The County also argues that COTA's valuation determination was not supported by substantial competent evidence. We disagree. Lipson testified that he asked the County to assess his property at $71,000, which was the final valuation subject to assessment in the prior year and was not challenged by either party. Lipson further testified that he believed the value of his property was "between $50,000 and . . . $70,000." He explained that his opinion of value was based on the County's documentation of sales of like mobile homes after deducting the value of the leasehold interest. Kansas law has long recognized that an owner of property may competently testify as to the value of his or her property. *City of Wichita v. Sealpak Co.*, 279 Kan. 799, 802, 112 P.3d 125 (2005); *City of Wichita v. Chapman*, 214 Kan. 575, 580, 521 P.2d 589

(1974). We also note that Lipson has not appealed the value established by COTA's order. There has been no showing that COTA's value determination was unreasonable, arbitrary, or capricious. See *In re Tax Appeal of ANR Pipeline Co.*, 276 Kan. 702, 710, 79 P.3d 751 (2003).

Affirmed.